**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**RAYMOND D. GITTINS,**

       **Plaintiff,**          **CIVIL ACTION NO. 09-CV-12334**

  vs.

                                  **DISTRICT JUDGE MARIANNE O. BATTANI**

**COMMISSIONER OF**       **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

       **Defendant.**
_____/

## **REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION:**    This Court recommends that Plaintiff's Motion for Summary Judgment (docket no. 9) be DENIED, Defendant's Motion For Summary Judgment (docket no. 10) be GRANTED and the instant Complaint DISMISSED.

*** 

**II.    PROCEDURAL HISTORY:**

    Plaintiff filed an application for a period of disability and Disability Insurance Benefits with a protective filing date of June 30, 2005 alleging that he had been disabled since May 15, 1997 due to coronary artery disease, diabetes, chest pain, hand pain, and having had two consecutive pacemakers installed. (TR 50, 56-58, 64-65, 71, 110, 113). The Social Security Administration denied benefits. (TR 38-42). A requested *de novo* hearing was held on June 4, 2008 before Administrative Law Judge (ALJ) Thomas Walters who subsequently found that the claimant was not entitled to a period of disability or Disability Insurance Benefits because he was not under a disability at any time from May 15, 1997 through the date last insured, December 31, 2001. (TR

15, 21, 50, 349, 352). The Appeals Council declined to review the ALJ's decision and Plaintiff commenced the instant action for judicial review. (TR 3-5). The parties filed Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

### III. PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE AND VOCATIONAL EXPERT TESTIMONY

#### A. Plaintiff's Testimony

Plaintiff was fifty-eight years old at the time of his date last insured and sixty-four years old at the time of the hearing. (TR 20, 353). Plaintiff has a high school education with cook's training in the military and computer training following high school. (TR 353). Plaintiff last worked for an auto manufacturer for 30.2 years in a variety of jobs, most recently as a preventative maintenance coordinator. (TR 354-55). Plaintiff testified that he retired in 1996 when he had completed thirty years of work and he "figured it was a good time to get out." (TR 355-56). Plaintiff receives a pension from the manufacturer and retirement benefits from social security. (TR 355-56).

Plaintiff testified that when he retired he was fifty-three years old and he was "just getting older and the work was getting a little harder." (TR 356). Plaintiff testified that in 1997 he began having heart problems which required the installation of a pacemaker. (TR 357). He testified that after the first pacemaker was installed, he could not "do the physical, hard labor" that he was used to doing. (TR 357). He testified that his hands cramp when he works with wrenches for a while and he has to take breaks after ten or fifteen minutes of mowing the lawn due to sweating and shortness of breath. (TR 358). Plaintiff testified that in 2000 and 2001 he probably could not perform medium exertion work, which was described as lifting 25 pounds for 66 percent of the workday and fifty

2

pounds for up to 33 percent of the workday, because his "muscle tone probably" would not allow him to perform that work. (TR 359).

Plaintiff explained that in November 2002 he presented to Michigan Cardiovascular and reported that the prior summer he had been moving rocks and felt his pacemaker dislodge. (TR 359). Plaintiff reported that he was putting a sea wall in front of his home and a younger man was operating the front loader and could not get a rock into it. Plaintiff described the rock as 150 to 200 pounds and Plaintiff "slid it into the front loader." The next morning his pacemaker was "popped out." (TR 360). He reported that he kept an eye on the pacemaker and when he was "getting ready to leave for Arizona for the winter the following year. . . . [I]t popped out through my skin and was infected." (TR 360). Plaintiff testified that moving the large rock was "just a one-time thing." (TR 360). At the end of 2002 Plaintiff had a new pacemaker implanted and had a cardiac catheterization and angioplasty. (TR 363).

Plaintiff testified that in the period after 1997, when the first pacemaker was installed, he took his pontoon boat out sometimes, and his heart doctor had recommended that he walk for exercise. (TR 362). Plaintiff testified that from 1997 to 2001 he belonged to the Masonic Lodge and the Bay City Consistory, he "got around" and did a few lectures, but nothing "real physical." (TR 357). Plaintiff testified that he is able to drive, grocery shop with his wife, and hasn't fished in five or six years. (TR 365-66). Plaintiff testified that he also has diabetes which is under control with medication and he takes heart medication, cholesterol medications and prostrate medication. (TR 365).

    **B.**    **Medical Evidence**

Plaintiff has to establish disability prior to his date last insured, December 31, 2001[1]. The Court has considered the medical evidence of record in full and will concentrate its detailed discussion on the records regarding the relevant time period. On May 16, 1997 Plaintiff underwent the implantation of a dual chamber pacemaker to address diagnoses of syncope and complete heart block. (TR 169-81, 242-47, 259-60, 280-82, 312-27). Prior to the implant, Plaintiff had a syncopal episode wherein he passed out when he was walking outside his house smoking. (TR 196, 200-202, 244). While being monitored at the hospital following the syncopal episode he went into complete heart block transiently. (TR 259).

Studies and monitoring of Plaintiff's pacemaker were normal until November 2002 when the examiner noted that the pacemaker pocket was protruding but the area was not red or warm to the touch. (TR 265-70). The physician reported Plaintiff's explanation that "he was lifting heavy rocks in June of this year and when he got up the next day, he noticed that the pacemaker site was sore and went to his family doctor." (TR 265). The physician reported that the x-rays showed that the pacemaker had moved a small distance but that the leads and pacemaker were fine. (TR 265). Rehan Mahmud, M.D., noted Plaintiff's report that he had been "swinging sledgehammers" and moving a "200-300 pound" rock when he suddenly felt his pacemaker pop. (TR 227). There was swelling but no sign of infection in November 2002. (TR 126-27, 227, 306-09).

In December 2002 Plaintiff reported severe pain and pressure "down his axilla and into his chest with mild exertion" and pain down his left chest which occurred while shoveling. (TR 124-25,

---

[1]"Plaintiff's eligibility for DIB is determined by the last date that he was insured for such benefits. Plaintiff's insured status ceased in the last quarter in which he had twenty quarters of contribution into the Social Security system within a forty-quarter period." *Kruse v. Comm'r of Soc. Sec.*, 2009 WL 902440 *5 (W.D. Mich. Apr. 2, 2009) (citing 42 U.S.C. §§ 416(i), 423(c)(1)(B)(i); 20 C.F.R. § 404.130(b); *Schacht v. Barnhart*, 2004 WL 2915310 at * 7, fn. 1 (D.Conn. Dec. 17, 2004)).

146-47, 238-39, 248-49). It was noted that Plaintiff's stress testing was found to be "abnormal with septal ischemia." (TR 236). Plaintiff was diagnosed with unstable angina pectoris and underwent a left heart catheterization, left ventriculogram, selective coronary angiography of the right and left coronary arteries, and angioplasty and "intracoronary stenting of the left anterior descending coronary artery." (TR 140-41, 236-37). At that time Plaintiff's diagnoses were noted as unstable angina, successful intracranial stenting of the left anterior descending coronary artery, hyperlipidemia and hypertension. (TR 236). Plaintiff's medications were aspirin, Plavix, Lipitor, Hytrin, Glucotrol, isosorbide mononitrate and metoprolol, and Nitrostat Sublingual p.r.n. (TR 236). Plaintiff was advised to "follow a heart-healthy diet with light and easy gradual return to normal activity over the next week" and avoid all smoking and tobacco exposure. (TR 236).

In November 2003 Plaintiff underwent a cardiac catheterization to address "focal reversible ischemia involving the anterior wall consistent with left anterior descending restenosis." (TR 151-52, 240-41). The catheterization revealed no evidence of restenosis and the physician reported that he was "happy to say that he looks great and his coronary arteries are quite clean. The stented portion looks wonderful." (TR 241).

At a December 2003 examination the physician reported that there was an "open area at the lateral edge of [the] pacemaker pocket with infection." (TR 153, 263). Plaintiff underwent a pacemaker extraction on December 26, 2003 and implantation of a new pacemaker on January 2, 2004 in the right infraclavicular area. (TR 229-235, 254-58, 301-05).

In October 2004 Plaintiff underwent a carotid doppler study which revealed "less than 50% stenosis of the right common and external carotid artery and 50-70% stenosis of the left external carotid artery." (TR 253). An October 25, 2004 stress echocardiogram was negative for exercise

induced cardiac ischemia. (TR 128, 131, 271). In May 2005 Plaintiff underwent a bilateral carotid ultrasound which showed no evidence of hemodynamically significant stenosis. (TR 251).

    **C.**    **Vocational Expert**

The Vocational Expert (VE) testified that Plaintiff's past work as a machine maintenance supervisor was skilled heavy work with some skills transferable to light exertional occupations such as semi-skilled tool crib attendant and semi-skilled machine operator jobs (4,000 total jobs available in the state of Michigan). (TR 368). The ALJ asked the VE to consider an individual of Plaintiff's age, education and vocational experience with the ability to perform a range of medium exertion, unskilled work. (TR 368). The VE testified that there are approximately 125,000 such jobs within the state of Michigan which such an individual could perform. (TR 369). The ALJ asked the VE to consider the same individual with the ability to perform a full range of light work not restricted to unskilled. (TR 369). The VE confirmed that such an individual could perform the tool crib jobs to which he had already testified. (TR 369).

The VE testified that if Plaintiff's testimony were credible, he could not perform the range of medium, unskilled jobs, the tool crib jobs or light jobs on a full-time basis due to his reports of becoming very tired after a short period of minimal exertion and the need to take rest periods after ten to fifteen minutes. (TR 369). The VE confirmed that his testimony was consistent with the Dictionary of Occupational Titles (DOT).

**IV.**    <u>**ADMINISTRATIVE LAW JUDGE'S DETERMINATION**</u>

The ALJ found that although Plaintiff met the disability insured status requirements through December 31, 2001, had not engaged in substantial gainful activity since his alleged onset date of May 15, 1997 and suffers from a history of heart block with dual chamber pacemaker implant, a severe impairment, he does not have an impairment or combination of impairments that meets or

equals the Listing of Impairments. (TR 17-18). The ALJ found that Plaintiff's allegations regarding the extent of his symptoms were not totally credible and although Plaintiff could not perform his past work, he has the ability to perform the full range of medium exertion work and there are jobs that exist in significant numbers in the economy which Plaintiff can perform. (TR 20-21). Therefore he was not suffering from a disability under the Social Security Act from May 15, 1997 through the December 31, 2001 date last insured. (TR 21).

## V. LAW AND ANALYSIS

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial

evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B. Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1) he was not presently engaged in substantial gainful employment; and

(2) he suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) he did not have the residual functional capacity to perform his relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented him from doing his past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education and past work experience to determine if he could perform other work. If he could not, he would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

8

Plaintiff argues that the ALJ's credibility determination is not supported by substantial evidence and the hypothetical question to the VE did not accurately describe Plaintiff's impairments and limitations. (Docket no. 9).

**C.     Analysis**

*1.     Whether the ALJ's Credibility Determination is Supported By Substantial Evidence*

Plaintiff argues that the ALJ's credibility determination is not supported by substantial evidence. Plaintiff argues that the ALJ erred in discounting the credibility of Plaintiff's testimony that after working with wrenches he has hand cramps which cause him to drop things, that he needs to take rest period approximately every ten to fifteen minutes when doing what the VE classified as "primarily light work," like mowing the lawn, and that his muscle tone probably would not allow him to perform medium exertion work on a regular basis[2]. (Docket no. 9).

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters,* 127 F.3d at 531. Credibility assessments are not insulated from judicial review. Despite deference due, such a determination must nevertheless be supported by substantial evidence. *See id.* An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and

---

[2]Plaintiff in his brief refers to his own testimony that his hands would cramp after he worked with wrenches and that he would drop things. (Docket no. 9, TR 358). There is, however, no objective medical evidence showing a condition or impairment of the hands, the ALJ did not find at step two that Plaintiff had a severe condition related to his hands, and Plaintiff did not challenge the ALJ's findings at step two of the disability determination. The ALJ's failure to include hand-related limitations in the RFC is supported by substantial evidence, and Plaintiff has failed to identify any evidence to support his assertion of this impairment or limitation.

9

the reasons for that weight." SSR 96-7p. "It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.*

Furthermore, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 404.1529(c)(2). In addition to objective medical evidence, the ALJ must consider all the evidence of record in making his credibility determination. *See* 20 C.F.R. § 404.1529(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994).

The ALJ found that although Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms" his statements concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent that they were inconsistent with the RFC assessment. (TR 19). The ALJ considered Plaintiff's reports that he lacked energy, was easily fatigued, his pacemaker had popped out, and that he was limited in his ability to lift heavy weights or persist on exertional activities. (TR 19).

In making his credibility determination, the ALJ pointed out the effectiveness of Plaintiff's medical treatment and the pacemaker implant, noting that Plaintiff's medical records during the period at issue show that he was doing very well and the pacemaker was effective. (TR 17-18). The ALJ pointed out that Plaintiff was "asymptomatic from a cardiac standpoint" and consistently denied complaints of related symptoms. Following the May 1997 implantation of the dual chamber pacemaker Plaintiff underwent periodic studies on his pacemaker functioning, including

cardiograms, from June 1997 through July 2004. (TR 259-270). The examining physician noted at each exam through November 25, 2002 that the pacemaker was "properly functioning" and that Plaintiff denied complaints of weakness, dizziness or syncope. (TR 265-270). It was not until November 2002, after Plaintiff's date last insured, that any issues were noted regarding the pacemaker and that was a protruding pacemaker pocket which Plaintiff reported resulted from his "lifting heavy rocks in June of this year." (TR 265). Douglas Mienk, M.D., treated Plaintiff from 1997 through 2005. (TR 116, 192, 328-33, 339-45). At examinations in 1998, 1999, 2000 and 2001 Dr. Mienk reported that Plaintiff denied any chest pressure, shortness of breath, orthopnea, PND or edema. (TR 228-32).

The ALJ also considered Plaintiff's daily activities. (TR 19-20). The ALJ found that Plaintiff "maintained a lifestyle and engaged in daily activities that detract from assertions that he was unable to work on a sustained basis." (TR 19). The ALJ pointed out that the record showed reports that Plaintiff performed self-care tasks, prepared meals, tended his lawn and flowers, performed basic household cleaning tasks and home repairs, washed family vehicles, drove, shopped, used a computer, "attended to family financial matters, walked for exercise, boated, camped, played golf, and wintered in Arizona." (TR 19-20). The record supports the ALJ's statements. In a function report dated August 8, 2005 Plaintiff reported that he is able to prepare meals, cut grass, work on his computer, run errands, watch television and water flowers. (TR 102). He reported that he was no longer able to drive a race car or weld because his hands cramp, but he is able to feed, bathe and walk his dog, wash vehicles, and perform some household chores including cleaning. (TR 103-04, 106). He reported going outside daily and that he was able to travel by walking, going by car or riding a bicycle. (TR 105). He went shopping at the grocery store,

11

hardware store and clothing store. (TR 105). He reported that golf is a hobby and he engages with others in playing cards, golfing or camping about once a week. (TR 106).

In July 2000 Dr. Mienk reported that Plaintiff was "doing pretty good" with "[n]o real complaints" and reported that Plaintiff had been walking and "tries to golf everyday." (TR 330). On April 2, 2001 Dr. Mienk reported that Plaintiff was doing "OK," was back from Florida and that Plaintiff had "kind of pulled a muscle while scooping the 60 lb. dog off the bed, then it was doing better, and then he bent over to do his trailer hitch, he hit his head on the thing and it was a aching." (TR 329). In April 2005 Dr. Mienk reported that Plaintiff was back from Arizona and had a "great winter," was having hot flashes and flushing with the Avacor, but was otherwise doing "okay." (TR 192). In 2002 Louis A. Cannon, M.D., examined Plaintiff for pain down his left chest which occurred when Plaintiff was "shoveling." (TR 124). The ALJ's findings regarding the extent of Plaintiff's activities is supported by substantial evidence.

The ALJ's findings with respect to Plaintiff's credibility are based on substantial evidence in the record, including his determination that Plaintiff's alleged limitations that are inconsistent with the RFC are not credible, such as the allegation that he must take breaks every ten to fifteen minutes and would not be able to perform medium exertion work due to his muscle tone. The ALJ properly considered Plaintiff's credibility and thoroughly explained his determination, which is supported by substantial evidence in the record.

## 2. *Whether the ALJ's Step Five Determination Is Supported By Substantial Evidence*

Plaintiff argues that the ALJ's hypothetical question to the VE was not accurate because it did not contain limitations related to his allegations that he needs to rest every ten to fifteen minutes after performing activities, his hands cramp and he drops items, and his muscle tone will not allow him to perform medium exertion work.

The ALJ found that Plaintiff has the RFC to perform the full range of medium work. (TR 18). Medium work is defined as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). This weight restriction is consistent with an August 30, 2005 Physical Residual Functional Capacity Assessment completed by a state agency consultant. (TR 159-66). The consultant concluded that Plaintiff has the ability to lift fifty pounds occasionally, twenty-five pounds frequently, stand and/or walk about six hours in an eight-hour workday and sit about six hours in an eight-hour workday and is unlimited in the ability to push and/or pull and use hand and foot controls except as limited in lifting and carrying. (TR 160). Other than Plaintiff's subjective report and testimony, the record does not contain evidence of limitations more restrictive than this. The ALJ included in the RFC those limitations which he found credible and the ALJ's RFC is supported by substantial evidence.

Despite Plaintiff's argument regarding the accuracy of hypothetical questions posed to the VE at the hearing, the ALJ relied on the Grid at step five to conclude that Plaintiff is not disabled. The Commissioner can meet his burden at the fifth step of his analysis by referring to the Grid, 20 C.F.R. Pt. 404, Subpt. P, App. 2, which dictates a finding of "disabled" or "not disabled" based on the claimant's exertional restrictions, age, education, and prior work experience. *See Born v. Sec'y of Health & Human Servs.*, 923 F.2d 1168, 1173 (6th Cir. 1990). But if a claimant has both exertional and nonexertional impairments, the Commissioner is not permitted to rely on the Grid alone to determine whether a disability exists. *See id.* at 1173-74; *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 203.15. The ALJ determined that Plaintiff has the ability to perform the full range of

medium exertion work, there were no non-exertional limitations and the ALJ properly relied on the Grid at step five[3].

Even if the ALJ had relied on the VE's testimony in response to the hypothetical question, the ALJ was required to incorporate in the hypothetical question only those limitations which he found credible and supported by the record. *See Casey v. Sec'y of Health and Human Serv.,* 987 F.2d 1230, 1235 (6th Cir. 1993). As set forth above, the ALJ's credibility determination is supported by substantial evidence and the ALJ found that Plaintiff's alleged severe limitations were not credible. Therefore, the ALJ did not err in failing to include these limitations in the hypothetical question to the VE.

"Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *See Casey*, 987 F.2d at 1233 (citing *Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 108 (6th Cir.1989)). "It is the rare case, the exception, in which every piece of evidence points incontrovertibly towards the holding." *Phillips v. Sec'y of Health & Human Servs.*, 812 F.2d 1407 at *2 (6th Cir. 1987). The ALJ's decision was supported by substantial evidence in the record and his findings were articulated in his decision.

## VI.    CONCLUSION

The ALJ's decision was within the range of discretion allowed by law and there is insufficient evidence for the undersigned to find otherwise. Plaintiff's Motion for Summary

---

[3]The ALJ found that pursuant 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 203.15, on the date last insured Plaintiff was a high school graduate of advanced age with skilled or semi-skilled prior work experience with skills not transferable and able to perform medium exertion work. (TR 20-21). The Grid directs a finding of "not disabled."

Judgment (docket no. 9) should be DENIED, Defendant's Motion for Summary Judgment (docket no. 10) should be GRANTED and the instant Complaint DISMISSED.

**REVIEW OF REPORT AND RECOMMENDATION**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: June 2, 2010
s/ Mona K. Majzoub
MONA K. MAJZOUB
UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: June 2, 2010          s/ Lisa C. Bartlett
                                         Case Manager